### BORCHARD et al. v. CALIFORNIA BANK et al.

### No. 9205.

Circuit Court of Appeals, Ninth Circuit.
Dec. 2, 1939.

Rehearing Denied Jan. 17, 1940.

Lloyd S. Nix, of Los Angeles, Cal., for appellants.

Tom W. Henderson, Chas. E. Donnelly, R. W. Proudfit, and Donald O. Welton, all of Los Angeles, Cal., for appellees.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal by the owners of real property from an order of the District Court in proceedings under Section 75, sub. s, of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203, sub. s, authorizing appellees to proceed to foreclose or sell under trust deeds certain real property in Los Angeles County, California.

The appellants first brought their proceedings under Section 75 of the Bankruptcy Act in November, 1934. In May, 1935, an appraiser's report was filed fixing the value of the real property here involved at $68,550. Thereafter, on June 26th, 1935, the original proceedings were terminated by reason of the decision of the Supreme Court in the case of Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, involving the validity of the Act. In September, 1935, after the passing of the amendatory Act, the proceedings were reinstated, and the appellees were enjoined and restrained until further order of the court from selling or causing to be sold any of the appellants' real property. The appellants were thereupon adjudged bankrupt under said Section 75, sub. s, and reference was made to the Conciliation Commissioner to act as Referee in Bankruptcy. On October 18, 1935, the date of the first meeting with creditors, appellants filed with the Conciliation Commissioner their petition that appraisers be appointed and their property be set aside to them under the provisions of Section 75, sub. s. Thereafter, with the understanding that they would be without prejudice to the rights of either party, various stipulations were entered into by appellants and appellees as to the administration of the proceedings, operation of the farming property, and the disbursement and use of proceeds of crops in 1936, 1937 and 1938. On June 7, 1938, on application of the appellants, appraisers were appointed by the Conciliation Commissioner, and their report was filed June 22, 1938, appraising the real property involved herein at $87,300. On November 9, 1938, the appellees filed their petition for leave to sell all of said real property under deeds of trust, and on December 5, 1938, the court made an order that the Conciliation Commissioner make no further order staying or purporting to stay proceedings against appellants or any of their property pursuant to Section

75, sub. s, pending determination of the petition to sell. On March 25, 1939, the court made the order from which this appeal is taken, granting the appellees' petition and authorizing them to proceed to foreclose or sell said property. The court expressed its opinion by the following memorandum:

"It appears that the indebtedness of the debtors to the bank has constantly increased in amount since 1934. In October of that year the total was $65,735.27. At the time the last motion was filed the indebtedness had grown to the amount of $89,246.82. The claim of the bank is that it is threatened with loss and that the property is insufficient in value to satisfy the amount of the debt owing to it. On the other hand, the debtors claim that their property is worth approximately $90,000.00. They submitted several affidavits of individuals who supported their contention with regard to the value. It appears that appraisers appointed by the conciliation commissioner appraise the total value of the property at $87,300.00. In addition to this, the bank submitted affidavits of two real estate brokers who fix the value at $55,085.00 and at $68,552.00 respectively. An employee of the bank makes affidavit that the assessed value of the property for tax purposes for the fiscal year 1937-1938 is a total of $30,-400.00. It is quite a common understanding that assessors appraise real property at about 50% of its actual value. The highest appraisement figure given by the real estate brokers would seem to represent approximately the correct market value."

■ Appellants rely upon several assignments of error. The gist of their first assignment is that the District Court erred in permitting foreclosure of liens upon the property while the conciliation commissioner had under consideration the making of a stay order under Section 75, sub. s(2), 11 U.S.C.A. § 203, sub. s(2). The argument seems to be that such a stay order is mandatory. To this we do not agree. It was said in Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, 300 U.S. 440, 462, 57 S.Ct. 556, 562, 81 L.Ed. 736, 112 A.L.R. 1455, wherein the Supreme Court upheld the constitutionality of Section 75, sub. s:

"* * * Paragraph 3 also provides that 'if * * * the debtor at any time * * * is unable to refinance himself within three years,' the court may close the proceedings by selling the property. This clause must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period."

Appellants argue in connection with this assignment of error that this court in the case of Mortgage Guarantee Co. v. Moser, 9 Cir., 95 F.2d 944, held that after an adjudication under Section 75, sub. s, the case must be referred to a referee and appraisers to find out whether the three-year rehabilitation is possible, before a creditor will be permitted to foreclose its lien. An examination of the cited case, however, discloses that this court merely held that it was not an abuse of discretion for the trial court to require a reference to the referee and appraisers. It does not follow that it would be an abuse of discretion for the court to make its own finding as to the possibility of rehabilitation. It seems clear from the case of Wright v. Vinton, etc., supra, that the granting or denial of a petition for authority to foreclose in proceedings such as we have before us is at all times a matter for the exercise of the court's discretion. It is the well settled rule that an appellate court will not review the action of a lower court as to matters within its discretion unless it appears that there has been an abuse of discretion, and we find no such abuse.

■ Appellants' second point is to the effect that the appraisal made on June 22, 1938, appraising the real property involved herein at $87,300 was binding on the trial court, no objection or exception thereto having been made. Our answer to appellants' first point also answers this second objection. Since the court of first instance has complete control and discretion over the property, it is empowered to make its own findings as to the value thereof. In this connection, an examination of the statutory provisions for appraisement indicates the purpose of the appraisement. It is provided in Section 75, sub. s, that the appraisers shall fix the fair and reasonable market value of the property, and that either party may file objections, exceptions and take appeals therefrom within four months from the date that the referee approves the appraisal. It is then provided Section 75, sub. s(3), 11 U.S.C.A. § 203, sub. s(3), that at the end of three years, or prior thereto, the owner of the property

may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal, and that the court shall thereupon turn over to him full possession and title of said property, free and clear of encumbrances. There is a further provision in the same subdivision for a reappraisement at the request of either the creditor or debtor. The provisions for appraisement have no bearing whatever on the right of the court to authorize foreclosure if at any time it appears that the debtor is unable to refinance himself within three years.

■ Appellants next urge that the finding of the District Court to the effect that the appellants were or would be unable to financially rehabilitate themselves or to refinance their loans is not supported by the evidence. It is argued that the burden of showing the inability of the debtor to effectuate his own rehabilitation rests upon the creditor seeking to foreclose, and that this burden has not been sustained by appellees.

First, turning to the finding of the court as to the value of the property, we have above held that the court was empowered to make its own findings. As evidenced by the language of the trial judge's memorandum decision, the finding of value was arrived at after consideration of two appraisements by the referee's appraisers, affidavits of several real estate brokers, and the assessed valuation of the property for tax purposes. There certainly was ample evidence to support such finding.

Next, it is argued that the court erred in including in the amount of indebtedness certain foreclosure costs and attorneys' fees, and that there are certain other errors in the court's accounting. Without passing on the question of the propriety of including the foreclosure costs in the amount of indebtedness, we turn to the pleadings before us. The allegations of the appellees' "Petition for Leave to Sell Under Deeds of Trust" are to the effect that the total indebtedness to the petitioner at the time of filing the petition was in excess of $89,000; that taxes in the sum of $1,763.26 were then a lien upon the property; that for more than three years last past the total amount of indebtedness had steadily been increased until at the date of the petition the total amount of increase in said indebtedness since the inception of the proceedings amounted to approximately $25,000; that the appellants for more than three years last past had been and were at the time of filing the petition unable to financially rehabilitate themselves or to refinance said loans; and that they had no equity in the property. The appellants filed no answer to appellees' petition. The only document filed in opposition to the petition, other than affidavits of appraisal, was an affidavit of counsel for appellants, which affidavit was based solely upon the fact that the proceedings were at that time pending before the conciliation commissioner. Whether or not there was an issue as to the facts upon which the appellees' motion was made, and whether or not a duty rested upon the appellees to otherwise prove those facts, the court's memorandum shows that he considered all of the pertinent facts that had been presented in the proceedings before ruling on the motion.

In addition to the above, it appears without dispute that the total indebtedness including principal, advancements and interest, excluding the foreclosure costs, etc., which are complained of, amounts to in excess of $83,000, and is increasing rapidly because of accruing interest and taxes. In view of the court's finding that the property was valued at only $68,552, there was no error in the finding that the debtors are unable to financially rehabilitate themselves. From the evidence this would follow almost to a mathematical certainty. However, we are not prepared to say that the order would not have been proper even if the full value as claimed by appellant had been found to be the true value.

■ Appellants argue that it was error for the court to treat the total indebtedness and all of the security as a single unit for the purpose of determining the propriety of granting the petition for leave to sell, since there were four separate parcels of land, securing separate loans. With respect to this argument, we deem it sufficient to say that the very large load of ever increasing indebtedness as demonstrated by the undisputed evidence amply supports a finding that there was no reasonable possibility of appellants' rehabilitation. In these circumstances there was no abuse of discretion in the trial court's making one finding respecting the entire indebtedness of appellants to appellees.

 Appellants' final argument is to the effect that the trial court could not lawfully authorize a sale under the trust deeds before a trustee in bankruptcy was elected. This objection was not made in the court below, and cannot be considered for the first time on appeal. We do not consider it a question going to the jurisdiction of the court. In this connection we approve the language of the court in Re Ostlind Mfg. Co., 1937, D.C., 19 F.Supp. 836, 838, 839, as follows:

"The fundamental purpose of the acts relating to bankruptcies is to conserve the properties for the benefit of the debtor and creditors alike or to reduce the assets to cash for distribution among the creditors. All the specific directions of these laws, although mandatory in form, are subservient to these major purposes. The courts have authority to deal comprehensively with the real and personal property of the bankrupt, so long as such purposes are carried out. * * *

"But it may be objected that since the provisions of the statute are mandatory, violation thereof removes the foundation for the orders. But jurisdiction once established is not so avoided. * * *

"But where a court has jurisdiction, it is not obliged to render correct decisions. It has the authority to hear and determine. If within the scope of power and founded in jurisdiction, the decision, whether right or wrong, is a judicial act and a finality."

It should be borne in mind that this is not a case where unsecured creditors are complaining of the court's order. If such were the case questions might arise which are foreign to the limited issue before us.

The decision of the District Court is affirmed.

### On Petition for Rehearing.

Appellants have filed a petition for rehearing, contending that the case of John Hancock Mutual Life Ins. Co. v. Bartels, 60 S.Ct. 221, 84 L.Ed. —— (December 4, 1939), decided by the United States Supreme Court a few days subsequent to our decision in the instant case, holds contrary to our decision.

We have examined the Hancock case, supra, and do not agree with appellants' interpretation of the case.

In the cited case the farmer had petitioned under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and the petition was referred to a conciliation commissioner. The usual proceedings were had, in which the farmer failed to effect the voluntary adjustment with his creditors, and the farmer petitioned to be declared bankrupt under Section 75, sub. s.

The principal creditor of the farmer moved the District Court to set aside the adjudication under Section 75, sub. s, and to dismiss the debtor's petition, on the ground that the farmer was not entitled to avail himself of the provisions of that section since there was no reasonable possibility of financial rehabilitation. The District Court granted the motion to dismiss, and upon appeal to the Circuit Court of Appeals the order of the District Court was reversed. The Supreme Court affirmed the decision of the Circuit Court of Appeals, 5 Cir., 100 F.2d 813, holding that the Act contained no provisions for dismissal because of the absence of reasonable probability of financial rehabilitation. In so holding, the Supreme Court disapproved of certain dictum in the case of Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, 300 U.S. 440, 462, 57 S.Ct. 556, 562, 81 L.Ed. 736, 112 A.L.R. 1455, to the effect that a petition could be dismissed in the absence of the probability of financial rehabilitation.

In our decision we relied on the case of Wright v. Vinton Branch, supra, which held that the Act "must be interpreted as meaning that the court may terminate the stay if after a reasonable time it becomes evident that there is no reasonable hope that the debtor can rehabilitate himself within the three-year period." This construction was given the statute in order to uphold its constitutionality. The language which we relied upon in our decision is not the language of which the Supreme Court disapproved in the Hancock case, supra.

Appellants argue that the Hancock case holds that it is the duty of the District Court to follow the statute, and argue therefrom that the District Court erred in permitting foreclosure of liens upon the property while the conciliation commissioner had under consideration the making of a stay order.

 We adhere to our decision that the District Court has discretion to terminate

the stay if at any time it appears that re-habilitation is not reasonably probable, and that in the instant case, it does not appear that the District Court abused that discretion. The appellants argue that it was improper for the Court to authorize the sale under the trust deeds before the election of a trustee in bankruptcy. But this is not a question going to the jurisdiction of the court, and therefore cannot be considered for the first time on appeal.

The petition for rehearing is denied.