## PARADISE LAND & LIVESTOCK CO. v. FEDERAL LAND BANK OF BERKELEY, CAL.

### No. 1867.

Circuit Court of Appeals, Tenth Circuit.

Dec. 22, 1939.

J. D. Skeen, of Salt Lake City, Utah (E. J. Skeen, of Salt Lake City, Utah, on the brief), for appellant.

Richard W. Young, of Berkeley, Cal. (Richards & Mitchell, of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, BRATTON, and HUX-MAN, Circuit Judges.

HUXMAN, Circuit Judge.

The appellant, Paradise Land & Livestock Company, herein called the debtor, is a farming corporation, operating in Cache County, Utah. The debtor filed its petition in the United States District Court for the District of Utah, under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, asking for a composition or extension of its debts under the Act.

It listed the following debts: To the Federal Land Bank of Berkeley, California, an indebtedness of $61,777.20; to the J. D. Harding Estate, $10,000; unsecured judgment, $408; Farm Credit Administration, $8,000. It scheduled assets of approximately 9,500 acres of land and an account of $1,333.33.

The petition was approved as properly filed and referred to the Conciliation Commissioner. Before a meeting of the creditors was had, the Federal Land Bank filed a petition praying for the dismissal of the proceedings. An order to show cause was issued and answer was filed to the petition, and the debtor made an offer of compromise settlement which was rejected. Thereupon the debtor filed a petition under Subsection (s) of Section 75, praying to be adjudged a bankrupt, and it was so adjudged. Subsequent to this adjudication, the Land Bank again filed a petition for the dismissal of the proceedings, alleging that the offer was not made in good faith and that the debtor was not the owner of the property. An appraisal was made by the Conciliation Commissioner and reported to the court with an order fixing the rental

of the property at $3,185. An amended order was filed fixing the rental at $3,795. No appeal was taken from the order fixing the rental.

The court heard the evidence and directed findings of fact for the Land Bank and ordered dismissal of the proceedings. From this ruling an appeal has been taken to this court.

Two points are urged for consideration on this appeal. The debtor contends that the court was not justified, first, in finding and concluding that there was no reasonable hope of the debtor being able to rehabilitate himself within a reasonable length of time, and second, in making and entering an order directing dismissal of the proceeding while the debtor was ready, willing and able to pay in cash the full rental value of the property as fixed by the Conciliation Commissioner, and where the debtor had not failed to comply with the orders of the court requiring payment or otherwise.

The Supreme Court of the United States, in John Hancock Mutual Life Ins. Co. v. Benno Bartels, 60 S.Ct. 221, 223, 84 L.Ed. ——, decided December 4, 1939, said: "The plain purpose of Section 75 was to afford relief to such debtors who found themselves in economic distress however severe, by giving them the chance to seek an agreement with their creditors, subsections a to r, and, failing this, to ask for the other relief afforded by subsection s."

Subsection (s) provides that debtor, failing to procure the benefits of subsections (a) to (r), inclusive, may amend his petition, asking to be adjudged a bankrupt. The section further provides that upon being adjudicated a bankrupt, debtor's property shall be appraised; that there shall be set aside to him his statutory exemptions. An order may issue directing the retention or possession of all the rest of his property or part thereof under the supervision and control of the court; that the court may stay all proceedings against the debtor or his property for a period of three years; that during such period the debtor may retain possession of the property under the control of the court, and upon payment of the reasonable rental value of the property. The clear intent and purport of this section is to give the court great latitude in the management and control of the bankrupt's estate, to the end that the rights of creditors as well as of the debtor may be protected.

The findings of fact show that the debtor was organized as a corporation; that prior to the year 1937 it engaged in the general business of raising and marketing livestock in Cache County, state of Utah. That on or about the 1st day of December, 1921, Bernard J. Stewart and wife made, executed and delivered to the Federal Land Bank of Berkeley, California, their promissory note in the principal sum of $10,000; that on or about the 1st day of December, 1921, Joseph B. White and his wife, Rachel, made, executed and delivered to the Federal Land Bank of Berkeley, California, their promissory note in the principal sum of $10,000; that on or about the 1st day of January, 1931, Joseph H. White, a single person, made and delivered his promissory note to the Federal Land Bank of Berkeley, California, in the principal sum of $25,000; that these notes were secured by real estate mortgages on certain real estate which has been acquired by the debtor and that debtor holds the title to the real estate described in these mortgages, subject to the terms and provisions thereof; that the Federal Land Bank of Berkeley commenced foreclosure proceedings on its mortgages in 1937; that the same were foreclosed; that there is due and owing on said mortgages the total sum of $61,777.20; that the debtor has no other assets or property except the described real estate and the sum of $4,700, being the proceeds of 10,000 bushels of wheat produced on the premises in 1938; that the real estate of debtor has been appraised in the total sum of $59,718, and that that is the reasonable value of the real estate; that the taxes for 1935, 1936, 1937 and 1938 are due and unpaid in the respective sums of $842.45, $633.96, $619.50 and $900; that besides the mortgage indebtedness due to the Federal Land Bank of Berkeley, and the taxes, the debtor is indebted to the Emergency Feed Loan Corporation in the principal sum of $8,000, with interest, and to Harry Eckstein and W. F. Smith in the sum of $408, with interest, making a total indebtedness of debtor in excess of $75,000; that nothing has been paid on the mortgage indebtedness since 1931; that the Conciliation Commissioner has fixed the annual rental of all the real property in the sum of $3,795; that the amount of the annual rental so fixed is approximately $900 less than the annual interest upon the indebtedness and the taxes upon the property.

Upon these facts the court found that there was no equity remaining in the property for the debtor over and above the mortgage indebtedness and other valid liens thereon; that the indebtedness could not be liquidated from the property; that no equitable or feasible method of liquidation of the indebtedness has been presented by the debtor; that there was no reasonable hope that the debtor could be refinanced or rehabilitated within three years or any other reasonable time; and that the financial condition of the debtor was without hope of rehabilitation.

These findings of the trial court are amply sustained by the evidence and are approved by this court.

Appellant contends that having proceeded under subsection (s) of Section 75, and having been adjudged a bankrupt, it is entitled to a three year stay absolute, so long as it pays the fixed fair rental value of the property. In considering this contention we must look to the object sought to be accomplished by the passage of Section 75, subsections (a) to (s) of the Bankruptcy Act, 11 U.S.C.A. § 203, known as the Frazier-Lemke Act. This law was passed during a national crisis to afford relief to distressed agriculture, resulting from the national depression. In innumerable instances agricultural debtors having substantial equities were faced with economic disaster and the loss of all their accumulations owing to the collapse of agricultural prices. Real estate values had disappeared, or if a market was available for real estate sales, the price obtainable was out of all proportion to the fair value of the property. It was in recognition of this general condition and for the purpose of affording a breathing spell to distressed agricultural debtors during which they might be rehabilitated that this act was passed.

The administration of the act is entrusted to a court of equity. It is the duty of the court in administering this act not only to look to the interests of the debtor, but also to the rights of the creditors, to the end that all rights may be preserved and protected.

It has been held that the act under consideration gives the court broad powers in its administration to curtail the stay of foreclosures for the protection of the mortgagees; that the property of which the debtor retains possession is at all times in the custody and under the supervision and control of the court, or if, after reasonable time it becomes evident to the court

that there is no reasonable hope that the debtor can rehabilitate himself financially within the three year period, then the court may terminate the stay. Wright v. Vinton Branch of Mountain Trust Bank, 300 U. S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A. L.R. 1455.

When debtor is beyond all reasonable hope of financial rehabilitation and agricultural composition proceedings cannot be expected to have any effect beyond postponing inevitable liquidation, such proceedings will be halted at the outset. In re Cresap (Cresap v. Equitable Life Assurance Soc. of United States), 7 Cir., 99 F. 2d 722; Sullivan v. Tofflemoyer, 10 Cir., 104 F.2d 835.

Failure of the debtor to secure approval of a plan of rehabilitation and in lieu thereof the finding by the court that there was no reasonable hope of rehabilitation and refusal to grant a stay, does not authorize a dismissal of the proceedings begun under subsection (s) of Section 75. John Hancock Mutual Life Ins. Co. v. Bartels, supra. When debtor invoked the provisions of subsection (s) it asked to be adjudged a bankrupt. It was so adjudged. Notwithstanding the finding of the court that there was no hope of rehabilitation, debtor was still entitled to have its estate administered as a bankrupt and in the administration of its estate as a bankrupt was entitled to such relief under the provisions of subsection (s) as the court found equitable and fair. Whether the debtor is entitled to retain its property or any part thereof or for how long are not matters for determination here. These are matters that will arise in the administration of the estate under the provisions of subsection (s) and are for the determination of the court, having due regard for the preservation of the rights of all parties. Whether such rights are granted or not, the adjudication stands as a voluntary adjudication in bankruptcy and appropriate proceedings should follow. Bartels v. John Hancock Mutual Life Ins. Co., 5 Cir., 100 F.2d 813; affirmed in John Hancock Mutual Life Ins. Co. v. Bartels, Supreme Court of the United States, 60 S.Ct. 221, 84 L.Ed. ——, decided December 4, 1939.

The judgment of the trial court is reversed and the case is ordered reinstated for further proceedings in conformity with this opinion.